Jon G. Shadinger Jr., Esq. (036232017)
Shadinger Law, LLC
2220 N East Ave
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| DENNIS MAURER, an Individual<br><br>Plaintiff,<br><br>vs.<br><br>43 HOSPITALITY ASSOCIATES LLC, a New Jersey Limited Liability Company,<br><br>Defendant. | Case No. 1:26-cv-11360<br><br>**COMPLAINT** |

## **Introduction**

Plaintiff, DENNIS MAURER, an individual, on his own behalf and on the behalf of all other similarly situated mobility impaired persons hereby sues the Defendant, 43 HOSPITALITY ASSOCIATES LLC, a New Jersey Limited Liability Company, ("Defendant") for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD").

## **The Parties**

1. Plaintiff is an individual over eighteen years of age and is otherwise sui juris. Mr. Maurer resides at 8 Prospect Avenue, Egg Harbor Township, NJ 08234.

2. Defendant owns and/or operates a place of public accommodation alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

## Jurisdiction and Venue

3. Defendant's property/place of public accommodation – a hotel known as Courtyard by Marriott Deptford – is located at 1251 Hurffville Road, Deptford, NJ 08096 (the "Property", the "Hotel", or "Courtyard").

4. Venue is properly located in the District of New Jersey because venue lies in the judicial district of the property situs. The Property is located in and does business within this judicial district.

5. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

6. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

7. The Defendant owns, leases, leases to, and/or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendant is thus required to comply with the obligations of the ADA.[2]

8. Plaintiff is an individual with disabilities as defined by and pursuant to the ADA. Mr. Maurer has multiple sclerosis and therefore has a physical impairment that substantially limits many of his major life activities[3] including, but not limited to, not being able to walk, stand, reach, or lift. Mr. Maurer, at all times, requires the use of a wheelchair to ambulate.

---

[1] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202

[2] 28 CFR § 36.201(a) and 28 CFR § 36.104

[3] as defined by 28 CFR § 36.105(b)(1-2)

**Factual Background**

9. Mr. Maurer is a staunch advocate of the ADA. Since becoming mobility impaired (and having to fully rely on the use of his wheelchair to ambulate) he has dedicated his life to the elimination of accessibility discrimination so that he, and others like him, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers.

10. Mr. Maurer is the president an advocacy group, known as The Independence Project, whose goal is to foster a community of disabled people, educate them as to their rights, and ensure their accessibility to places of public accommodation across the country.

11. Generally speaking, Mr. Maurer continues to encounter architectural barriers at many of the places that he visits. Seemingly trivial architectural features such as parking spaces, curb ramps, and door handles are taken for granted by the non-disabled but, when implemented improperly, become arduous and even dangerous.

12. The barriers to access that Mr. Maurer experiences at differing places of public accommodation are often similar in nature. For example, he is repeatedly faced with sloping in parking lots, improper curb ramps, abrupt changes of level within paths of travel, and non-accessible restrooms. This holds true for hotel rooms as well; he is often faced with a lack of maneuverability within the room and a lack of accessible features within the restrooms. He has become frustrated and disheartened by the repetitiveness of the complaints he has been forced to make to the employees and management at various establishments in the past; most often to no avail. Thus, he now finds his redress through the ADA; as Congress intended.

13. Mr. Maurer enjoys stays in the greater Philadelphia area throughout the year for shopping, entertainment, and leisure purposes. In doing so he often stays at hotels with his family in

surrounding locations for "staycations" – since it can be more difficult for him to travel great distances; thus, he regularly attends events in the Philadelphia area (especially Phillies and Sixers games). Mr. Maurer's last visit to the Property occurred on or about July 25, 2026, when he visited the Property as a prospective patron with the intent to avail himself of the goods and services offered to the public within but found that it was rife with ADA violations and barriers to access.

14. Moreover, prior to the onset of his disease and his ensuing disability, Mr. Maurer was a licensed thoroughbred horse trainer and assistant horse trainer for over twenty-five years. Horseracing remains his passion; he attends workouts, trainings, sales, and live racing whenever possible – as such he regularly travels across New Jersey, Pennsylvania, and New York.

15. The horse racing venues/farms frequently traveled to by Mr. Maurer include, but are not limited to, the following:

a. Delaware Park Race Track, located at 777 Delaware Park Blvd, Wilmington, DE 19804
b. Harrah's Philadelphia Racetrack, located at 777 Harrah's Blvd, Chester, PA 19013
c. Parx Racing, located at 2999 Street Rd, Bensalem, PA 19020
d. Penn National Race Course, located at 777 Hollywood Blvd, Grantville, PA 17028
e. Monmouth Park, located at 175 Oceanport Ave, Oceanport, NJ 07757
f. Meadowlands Racetrack, located at 1 Racetrack Dr, East Rutherford, NJ 07073
g. Saratoga Racecourse, located at 267 Union Ave, Saratoga Springs, NY 12866

16. In sum, the Property is (1) a place he regularly visits with his family for shopping (2) just a few minutes from the Atlantic City Expressway and the bridges into Philadelphia, (3) in proximity to many places Mr. Maurer visits regularly and will continue to visit regularly, (4) near several other properties inspected by Mr. Maurer for ADA compliance, and (5) on route from his home to Penn National Race Course, Harrah's Philadelphia Racetrack, and Parx Racing.

17. Mr. Maurer intends to return to the Property not only as a patron but also to monitor any

progress made with to respect to ADA compliance – he sincerely hopes that any return visits are not made in vain.

18. Mr. Maurer has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered his safety at the Property.

19. The ADA has been law for over thirty (30) years and yet the Property remains non-compliant. Thus, Mr. Maurer has actual notice and reasonable grounds to believe that he will continue to be subjected to discrimination by the Defendant.

20. Mr. Maurer has a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Property as described but not necessarily limited to the barriers he has personally experienced – which are listed in Paragraph 28 of this complaint.

21. Following any resolution of this matter Plaintiff will ensure that the Defendant undertakes the remedial work that is required to cure existing violations, under the appropriate standard, in full compliance with the ADA.

## COUNT I
### Violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.

22. Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

23. Enacted by overwhelming bipartisan consensus in 1990, and reinforced with the same consensus in 2008, the ADA reflects Congress's recognition that "discrimination" has precluded "many people with physical or mental disabilities" from "fully participat[ing] in all aspects of

society."[4]

24. Congress's objective was "the elimination or reduction of physical and social structures" that thwart "equal-citizenship stature for persons with disabilities."[5]

25. Title III of the ADA provides a cause of action to "any person" with disabilities who personally encounters an unlawful accessibility barrier and is thus "subjected to discrimination on the basis of disability." [6]

26. The Defendant has discriminated against the Plaintiff, and other similarly situated mobility impaired persons, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

27. A preliminary inspection of the Property has shown that violations of the ADA exist. That inspection, performed by Plaintiff's expert, further revealed that the remediation of all violations/barriers listed in Paragraph 28 are both technically feasible and readily achievable. Plaintiff's expert has based this judgement on personal knowledge of materials, pricing, labor, and the completion of similar projects in the area. The remaining barriers to access – which are procedural in nature and/or policy based – will need to be monitored into the future to ensure that the current discrimination is ceased and never reinstituted.

28. The following are architectural barriers and violations of the ADA that Mr. Maurer has personally encountered during his visits to the Property:

---

[4] 42 U.S.C. § 12101(a)(1)

[5] *Tennessee v. Lane*, 541 U.S. 509, 536 (2004) (Ginsburg, J., concurring)

[6] 42 U.S.C. § 12188(a)(1)

**Parking and Exterior Accessible Route**

a. The designated accessible parking area located at the does not lead to an accessible route, is not properly maintained, and is impeded by abrupt changes in level and cross-sloping; a violation of the ADAAG and Sections 402, 406, and 502 of the 2010 ADA Standards. These barriers have prevented Mr. Maurer from freely unloading from his van which utilizes a fold-out ramp; to avoid becoming blocked out by other vehicles he has been forced to park away from the facility in a flat, maintained area, travel around obstacles, and then through the vehicular area of the parking lot in order to reach the improperly designed and improperly located curb ramp.

b. The Property fails to provide a compliant accessible route from the parking area to the entrances; violating the ADAAG and Sections 402, 406, and 502 of the 2010 ADA Standards. The current route contains abrupt changes of level and cross-sloping which could cause a tip and fall and/or damage Mr. Maurer's wheelchair. The curb ramps used to access the Property from the parking area lack the requisite level landing areas.

c. The exterior accessible route at the Property is impeded by cross-sloping beyond the allowable limits and abrupt changes in level; in violation of the ADAAG and Section 402 of the 2010 ADA Standards. Mr. Maurer has been impeded by the excessive sloping and abrupt changes of level while traveling through the Property – these conditions present a tipping hazard and could damage his wheelchair.

d. The Property fails to provide the requisite number of fully compliant accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van access aisles), a violation of Section 502 of the 2010 ADA Standards. Due to the lack of accessible parking, Mr. Maurer has been forced to park away from the Hotel as

detailed above so that he could freely access his van and the improperly designed and improperly located curb ramp.

e. The Property fails to provide a compliant route to the adjacent street/sidewalk. Mr. Maurer has been precluded from accessing the Property from these points of entry due to the lack of an accessible route; a discriminatory omission which limits his options for pedestrian travel and transportation; a violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards.

f. The Property fails to provide a continuous accessible route throughout the entirety of the Hotel; the existing route lacks curb ramps throughout and contains steps/stairs in several portions rendering those areas inaccessible to Mr. Maurer. These architectural barriers have prevented Mr. Maurer from travelling across the entirety of the Property in his wheelchair and constitute a violation of the ADAAG and Section 402 of the 2010 ADA Standards.

**Access to Goods and Services**

g. Courtyard provides interior and exterior service elements which are mounted beyond the prescribed reach ranges; in violation of the ADAAG and Sections 308, 611, and 904 of the 2010 ADA Standards. Due to their height or the presence of obstacles Mr. Maurer cannot make use of these elements (laundry, gym, business center, countertops, work surfaces, vending, etc.).

h. Courtyard fails to provide accessible dining tables; a violation of the ADAAG and Section 902 of the 2010 ADA Standards. Due to the lack of an accessible dining table Mr. Maurer could not make use of the tables nor dine in a comfortable manner.

i. Entering Courtyard, in several areas, is impeded by abrupt changes in level at the threshold, excessive sloping at the base of the doors, improper door hardware, and a lack of

wheelchair maneuvering space due to a lack in latch-side cleraance; in violation of the ADAAG and Sections 402 and 404 of the 2010 ADA Standards. Due to these barriers Mr. Maurer cannot freely/safely enter the facility from several different areas of the Property.

j. Courtyard fails to provide a pool life and/or total accessibility in the pool area; violating the ADAAG and Section 1009 of the 2010 ADA Standards.

**Guestrooms/Restrooms**

k. The restrooms within the Courtyard accessible elements and contain architectural barriers to access including a lack of wheelchair maneuvering space, inaccessible water closets which lack proper controls, and improper signage; violations of the ADAAG and Section 601 of the 2010 ADA Standards. Due to these barriers Mr. Maurer could not freely use the restrooms.

l. The restrooms within Courtyard contain improperly mounted grab bars, improper centerlines for the toilets, and lacks the proper door width and the any wheelchair maneuvering clearance; in violation of the ADAAG and Section 604 of the 2010 ADA Standards. Mr. Maurer could not use the restrooms due to the overall lack of accessible features.

m. The lavatories within the guestroom restroom lack the requisite knee clearance and accessibility; thus Mr. Maurer could not access the sinks. This is a violation of the ADAAG and Section 606 of the 2010 ADA Standards.

n. Restrooms within Courtyard provide dispensers (soap, towels, toilet tissue, seat protectors, etc.) which are mounted outside proscribed reach ranges and are thus inaccessible to Mr. Maurer; a violation of the ADAAG and Section 308 of the 2010 ADA Standards.

o. The use of restroom doors within Courtyard is impeded by improper signage and/or a lack

of wheelchair maneuvering space due a lack of latch-side cleraance; a violation of the ADAAG and Section 404 of the 2010 ADA Standards.

p. Mr. Maurer requires an accessible guestroom with an accessible roll-in shower; it is not clear whether Courtyard possesses the requisite number of guestrooms with accessible bathtubs or roll-in showers nor the requisite number of accessible rooms with all accessible features as proscribed in Section 224.2 of the ADA Standards. Based on the number of total rooms at Courtyard (roughly 108) the Hotel should contain at least seven (7) mobility accessible guestrooms at least two (2) of which must contain roll-in showers. Courtyard's website does not display how many exist nor how many are available at a given time.

q. The roll-in shower within the guestroom lacked the space needed for wheelchair maneuvering clearance, contained controls and dispensers which were mounted too high; violations of the ADAAG and Sections 308, 309, 608, and 806. Due to these deficiencies Mr. Maurer could not make full use of the roll-in shower.

r. The lavatory within the guestroom lack the requisite knee clearance and pipe insulation; thus, he could make use of the sink as he could not fully approach; a violation of the ADAAG and Section 606 of the 2010 ADA Standards.

s. The guestroom door lacked the requisite latch-side clearance required to exit the room; thus, is left alone Mr. Maurer would have no way of exiting the room; a violation of the ADAAG and Section 404 of the 2010 ADA Standards.

29. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and

Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[7]

30. Additionally, a Justice Department regulation commonly referred to as the Reservation Rule, 28 C.F.R. § 36.302(e)(1), explains that Title III requires hotels to ensure that their reservation services include the accessibility information necessary for disabled people to enjoy the services as fully as non-disabled people. The Reservation Rule provides that under Title III, a "place of lodging" must "with respect to reservations made by any means, including by telephone, in-person, or through a third party ... [i]dentify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs."[8]

31. Under the Reservation Rule, a hotel's obligations extend to "reservations made by any means, including … through a third party."[9] Thus, hotels "must provide these third-party services with information concerning the accessible features of the hotel and the accessible rooms."[10]

32. Courtyard's website does display the accessible room categories and their availability; however, this availability information may not be accurate. Mr. Maurer requested an accessible room during the checkout process but was told none were available.

---

[7] 28 CFR § 36.104

[8] 28 C.F.R. § 36.302(e)(1)

[9] 28 C.F.R. § 36.302(e)(1)

[10] 28 C.F.R. pt. 36, app. A at 805

33. Th information contained on the website does not accurately reflect the accessibility of the rooms which are designated "Mobility Accessible". This inaccurate information represents a violation of the Reservation Rule as it does not provide potential mobility-impaired patrons with easily accessible information with which to make an informed purchasing decision.

34. The discriminatory violations described in Paragraph 28 may not be an exhaustive list of the ADA violations that exist at the Property, but they are the result of a preliminary inspection and include those personally experienced by Mr. Maurer. Given the obvious and blatant violations, the Plaintiff alleges, on information and belief, that there are other violations/barriers on the Property which relate to his disability. Thus, Plaintiff requires thorough inspection of the Property in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA. Once said inspection has been completed, the Plaintiff may amend this complaint in order to provide proper notice to the Defendant regarding the scope of this lawsuit.[11]

35. Plaintiff, and other mobility impaired persons, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

36. Defendant has discriminated against Plaintiff, and other mobility impaired persons, by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

37. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to remove architectural barriers, and communication barriers that are structural in

---

[11] See *Doran v. 7-Eleven Inc.*, (9th Cir. 2008) 524 F.3d 1034 (holding that once a plaintiff encounters one barrier at a site, they can sue to have all barriers that relate to their disability removed regardless of whether they personally encountered them)

nature.[12]

38. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[13]

39. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[14]

40. If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[15] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

41. Pursuant to 28 CFR § 36.402(a)(1) "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Maurer, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[16] Discovery in this matter will reveal if and when such alterations have taken place at the Property,

[12] 42 U.S.C. § 12181(b)(2)(A)(iv)
[13] 42 U.S.C. § 12181(b)(2)(A)(ii)
[14] 42 U.S.C. § 12181(b)(2)(A)(iii)
[15] as defined by 28 CFR § 36.401(a)(2)
[16] 28 CFR § 36.402(a)(2)

and to what corresponding technical and scoping specification the Defendant must meet/exceed to bring the Property into compliance with the ADA.

42. Pursuant to 28 CFR § 36.304(a) the Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable. This duty began at the outset of the ADA and remains continuous and ongoing to ensure that places of public accommodation are accessible to and usable by persons with disabilities; excepting temporary outages.

43. 28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element – that has not been altered – must comply with or be modified to meet. Those are defined as follows:

a. Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.
b. Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with either the 1991 Standards or the 2010 Standards.
c. Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

44. Plaintiff is not required to notify the Defendant of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiff has found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In his experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

45. Plaintiff is without adequate remedy at law and is suffering irreparable harm, including

bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiff and the Defendant, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

46. Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiff is entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

47. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Property and make such readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendant cure all violations of the ADA.[17]

**WHEREFORE,** Plaintiff respectfully demands;

a. The Court issue a Declaratory Judgment determining that the Defendant are in violation of Title III of the ADA.

b. Injunctive relief against the Defendant including an order to (1) cure all ADA violations existing at the Property listed herein and those later found through discovery within the next six months; (2) to make the Property accessible to and usable by individuals with disabilities; and (3) to require the Defendant to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendant to cease its discriminatory practices and to maintain the

[17] 42 U.S.C. § 12188(b)(2)

requisite accessible features at the Property – as required by the ADA.

d. An award of attorney's fees, costs, and litigation expenses (including expert fees and costs) pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

**COUNT II**

**Violation of New Jersey Law**
**Against Discrimination, N.J.S.A. 10:5-1 et seq.**

48. Plaintiff realleges and incorporates, by reference, all of the allegations contained in each of the preceding paragraphs.

49. The Property is a place of public accommodation as defined by N.J.S.A 10:5-5.

50. New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability. This opportunity is recognized and declared to be a civil right.[18]

51. As set forth above, the Defendant has violated the LAD by denying Mr. Maurer, and all other mobility impaired persons, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

52. As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Mr. Maurer has sustained bodily injury through the Defendant's actions – either intentionally or negligently – in the form of emotional distress, mental anguish, dignitary harm, and humiliation, in violation of the LAD.

---

[18] Pursuant to N.J.S.A 10:5-4

**WHEREFORE**, Plaintiff respectfully demands;

a. That this Court assume jurisdiction.

b. The Court issue a Declaratory Judgment determining that the Defendant is in violation of the LAD.

c. An injunction ordering Defendant to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.

d. A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted – attorney's fees, and litigation expenses; including expert fees and costs.

e. An order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property – as required by the LAD.

f. Other relief that this Court deems just and proper and is allowable under the LAD.

Respectfully submitted on this 2nd day of September 2026,

*/s/ Jon G. Shadinger Jr.*
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
2220 N East Avenue
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*